UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BABELA,<br><br>    Plaintiff,<br><br>v.<br><br>EMAN ELMI, et al.,<br><br>    Defendants. | Case No. 17-cv-01939-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 25 |

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at San Quentin State Prison ("SQSP"). Plaintiff alleges that defendants Dr. Garrigan and Dr. Elmi were deliberately indifferent to his serious medical needs in the treatment of his foot and toe pain and subsequent infection. Defendants have filed a motion for summary judgment. Plaintiff filed an opposition and defendants filed a reply. For the reasons set forth below, the motion for summary judgment is granted.

## DISCUSSION

**Motion for Summary Judgment**

**A.    Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

### B. Eighth Amendment Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.*

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth

2

Amendment, no matter how severe the risk. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

**C. Facts**

The following facts are undisputed:

Plaintiff is an 80-year-old man with several chronic and acute medical problems. Motion for Summary Judgment ("MSJ") Ex. A at 339-40. Plaintiff has chronic pulmonary disease, anemia, neck pain, degenerative joint disease in a knee and hepatitis C. *Id.* He also has a non-melanoma skin cancer. *Id.* He recently had surgery on his cervical vertebrae and had a tumor removed from his bladder. *Id.* at 340-42.

In June 2014, plaintiff sought medical care for severe pain in his right foot. *Id.* at 15. Plaintiff noted that in approximately 2002 he had a joint replacement surgery in the foot, and the same symptoms had now returned. *Id.*; Complaint at 2. A nondefendant doctor opined that plaintiff likely had degenerative joint disease and ordered x-rays. MSJ, Ex. A at 24. The x-rays showed severe degenerative joint disease of the first metatarsophalangeal joint and postoperative changes. *Id.* at 28. The metatarsophalangeal joint is where the big toe connects to the pad of the foot. MSJ at 5. Plaintiff was still able to walk. MSJ Ex. A at 28. Throughout the next year and half, up to and including December 3, 2015, plaintiff was regularly seen by medical staff, but he did not raise any issues with his foot and toe. *Id.* at 30, 37-38, 40, 47, 49, 51.

On December 30, 2015, defendant Dr. Garrigan treated plaintiff for "a new problem of pain and swelling in his right foot." *Id.* at 52. Dr. Garrigan planned to order the records pertaining to plaintiff's joint replacement surgery from 2002 and ordered another x-ray. *Id.*

Plaintiff was treated by Dr. Garrigan in January 2016 for other medical issues, but plaintiff did not discuss foot pain. *Id.* at 57. In February 2016, Dr. Garrigan reviewed the recent x-ray and noted that plaintiff's foot showed significant arthritis. *Id.* at 59. Dr. Garrigan also referred plaintiff to the new podiatrist, defendant Dr. Elmi. *Id.* at 59, 63.

Dr. Elmi saw plaintiff in May 2016 and reviewed his x-rays, which were "indicative of late stage arthritic changes of the first metatarsophalangeal joint." *Id.* at 64. He noted

that there appeared to be bone-on-bone contact, which was likely causing the pain. *Id*. He also found that plaintiff's foot was swollen and warm to the touch and should not have had that level of warmth and swelling. *Id.* Dr. Elmi thought it was possible that plaintiff had gout, which is a complex form of arthritis characterized by pain, swelling, redness and tenderness. *Id.* Plaintiff denied any fever, chills, nausea, or vomiting, which are signs the body is fighting off an infection. *Id.* Plaintiff was prescribed a nonsteroidal anti-inflammatory drug. *Id.*

Plaintiff was seen by Dr. Elmi two weeks later to discuss surgical options for his foot. *Id.* at 66. He reported that the prescription nonsteroidal anti-inflammatory drug was not working. *Id.* Dr. Elmi was concerned about surgery given plaintiff's age and chronic diseases. *Id.* He recommended that plaintiff receive rigid shoes to prevent the joint from bending, ease his current pain, and allow the joint to eventually fuse naturally, which would also reduce the pain. *Id.*

Plaintiff met with Dr. Garrigan in June 2016. *Id.* at 68. The results from a urine toxicology screen from a previous visit were available and showed that plaintiff was positive for morphine and another opioid pain medication. *Id.* Plaintiff did not have a prescription for these medications and admitted to receiving them from other inmates. *Id.* Plaintiff was provided a nonopiate pain reliever, and Dr. Garrigan noted that there was more swelling of the foot and ankle. *Id.* Plaintiff had a normal temperature. *Id.*

Later in June 2016, plaintiff sought medical attention because his right toe had swollen to more than twice the normal size, was infected and leaking pus. *Id.* at 71. Plaintiff was seen by medical staff and taken to the prison's Triage and Treatment Area ("TTA"), which is similar to an emergency room. *Id.* at 75; Garrigan Decl. ¶ 16. A nondefendant doctor diagnosed plaintiff with a skin infection and two open ulcers. *Id.* Ex. A at 72. The doctor ordered x-rays and prescribed two antibiotics, ceftriaxone and cephalexin. *Id.* Garrigan Decl. ¶ 16. On July 6, 2016, the nondefendant doctor noted that the skin infection was much improved but that plaintiff's pain persisted. MSJ Ex. A at 76. After consulting with Dr. Elmi it was decided to continue plaintiff on antibiotics and consider surgical options. *Id.*

4

Dr. Elmi saw plaintiff on July 12. *Id.* at 77. Plaintiff stated that the wound appeared five days before he was taken to the TTA. *Id.* Dr. Elmi reviewed the recent x-rays, which likely showed osteomyelitis, a bone infection. *Id.* Dr. Elmi recommended that the infection be addressed surgically. *Id.* He recommended removing the artificial joint implant that had been placed in 2002 and, depending on how things appeared once the surgery had commenced and he could view the infection, potentially performing a partial amputation. *Id.* at 77-78.

Dr. Elmi performed the surgery two days later, on July 14, 2016, at Marin General Hospital. *Id.* at 184. He incised and drained the foot wound, removed the joint implant, and then determined that partial amputation was necessary. *Id.* He found that portions of the first metatarsal bone were grey and necrotic, requiring removal. *Id.* at 184-86. Five days later it was noted that the surgery appeared successful with no sign of post operatic infection. *Id.* at 82.

**ANALYSIS**

Plaintiff does not dispute the medical care he received that was described above. Plaintiff argues that defendants were deliberately indifferent to his serious medical needs in failing to properly and more quickly diagnose the medical problems with his foot and toe. While plaintiff had a serious medical need, defendants argue that he was provided prompt and extensive medical care.

The undisputed facts demonstrate that plaintiff received a great deal of medical care in a prompt manner. In 2014 and 2015 plaintiff's intermittent complaints of foot pain were promptly addressed and two doctors, including Dr. Garrigan, who ordered and reviewed new x-rays concluded that plaintiff was suffering from arthritis and degenerative joint disease. Dr. Elmi treated plaintiff for the first time in May 2016 and, after reviewing the x-rays, also concluded that plaintiff was suffering from arthritis at the site of the 2002 implant procedure and that bone-on-bone contact was the cause of the pain. Plaintiff has failed to present any arguments that defendants were deliberately indifferent to his serious medical needs. To the extent they misdiagnosed plaintiff or pursued an incorrect

course of treatment, such actions could perhaps demonstrate negligence but fail to support an Eighth Amendment claim. A showing of nothing more than a difference of opinion between doctors as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). To establish that a difference of medical opinion as to the appropriate course of treatment amounted to deliberate indifference, the evidence must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Dr. Elmi advised plaintiff in early June 2016 that surgery was too risky due to the nature of plaintiff's complaints, the results of the x-rays, plaintiff's eighty years of age and chronic diseases. This decision, based on the symptoms and the risks associated with surgery, was reasonable and not deliberately indifferent to plaintiff's medical needs.

Plaintiff's foot and toe problems became much more severe in late June 2016. As soon as plaintiff alerted prison officials of the problem he was taken to the prison's emergency-room equivalent, where x-rays were ordered and an infection was diagnosed. He was given antibiotics to treat the infection. Plaintiff was seen by Dr. Elmi two weeks later and Dr. Elmi concluded that surgery was required. Dr. Elmi performed the surgery, which resulted in a partial amputation, two days later, on July 14, 2016.

Plaintiff argues that an incorrect or missed diagnosis regarding his foot and toe pain led to the surgery and partial amputation and that this demonstrates an Eighth Amendment claim. While it is regrettable and unfortunate that there was a partial amputation involving the first metatarsal bone, defendants have met their burden and presented enough evidence to demonstrate that they are entitled to judgment as a matter of law. Plaintiff has failed to present facts showing that there is a genuine issue for trial.

Plaintiff received prompt treatment for his foot and toe pain, and the medical testing indicated arthritis and degenerative joint disease. Defendants checked plaintiff for

6

signs that he had an infection, but he denied fever, chills, nausea or vomiting.  Based on the test results and no outward signs of infection, it was reasonable for defendants to follow the treatment plan they chose.  When plaintiff's symptoms became acutely worse and revealed an infection, he was promptly treated for the infection with antibiotics and then provided surgery.  Based on all the treatment provided by defendants, plaintiff cannot show that defendants were deliberately indifferent to his serious medical needs.

This case proceeded with respect to plaintiff's claim regarding the treatment of his foot and toe.  Defendants argue that it is possible that plaintiff was also attempting to proceed with a claim regarding denial of pain medication.  Defendants note that no such claim was exhausted.  Plaintiff does not address this issue in his opposition; therefore, any such claim is not a part of this action.[1]

## CONCLUSION

1. For the reasons set forth above, the motion for summary judgment (Docket No. 25) is **GRANTED**.

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 20, 2018

PHYLLIS J. HAMILTON
United States District Judge

---

[1] Several claims and defendants were dismissed from this action when this case was before a magistrate judge, who did not have consent of the unserved defendants, whom were dismissed.  *See Williams v. King*, 875 F.3d 500 (9th Cir. 2017).  The court has reviewed the dismissed claims and defendants and plaintiff's arguments in the complaint and other filings.  The court finds that the claims and defendants were properly dismissed by the magistrate judge.

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BABELA,<br>        Plaintiff,<br>    v.<br>EMAN ELMI, et al.,<br>        Defendants. | Case No. 17-cv-01939-PJH<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 20, 2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Babela ID: C-39684
San Quentin State Prison 2-W-68L
San Quentin, CA 94974

Dated: April 20, 2018

                          Susan Y. Soong
                          Clerk, United States District Court

                          By: /s/ Kelly Collins
                          Kelly Collins, Deputy Clerk to the
                          Honorable PHYLLIS J. HAMILTON